**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000121
17-DEC-2014
09:33 AM**

NO. CAAP-12-0000121

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MARZIE VALDEZ, Plaintiff-Appellant, v.
STATE OF HAWAII, DEPARTMENT OF HUMAN SERVICES
ADMINISTRATIVE APPEALS OFFICE, ADULT PROTECTIVE
SERVICES, STEVEN W. ROYAL, in his official capacity as
Administrative Appeals Hearing Officer, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 11-1-0163)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Leonard and Reifurth, JJ.)

In this secondary appeal, Appellant Marzie Valdez
("Valdez") appeals from the "Findings of Fact and Conclusions of
Law; Order Affirming Administrative Hearing Decision Dated
April 13, 2011," entered on February 1, 2012 in the Circuit Court
of the Third Circuit[1] ("Circuit Court").[2] The Circuit Court
decided in favor of Appellee State of Hawaiʻi, Department of
Human Services, Administrative Appeals Office, Adult Protective
Services ("DHS"), and affirmed the decision of a DHS hearing
officer, which found that Valdez abused a vulnerable adult, a 65-
year old female resident-patient ("Patient") of the Hilo Medical
Center, Extended Care Facility ("Facility").

On appeal, Valdez contends that the Circuit Court erred
in failing to conclude that: (1) the notice of her DHS hearing

---

[1] The Honorable Glenn S. Hara presided.

[2] In the caption to her opening brief, Valdez appears to contend
that she appeals from the Notice of Entry of Judgment Filed February 1, 2012,
although the document was neither attached to nor referenced in her notice of
appeal. The requirement that the notice of appeal designate the judgment
appealed from, however, is not jurisdictional. *City & Cnty. of Honolulu v.
Midkiff*, 57 Haw. 273, 275, 554 P.2d 233, 235 (1976). Therefore, we proceed as
though Valdez had appealed from the judgment.

violated Hawaii Revised Statutes ("HRS") § 91-9(b); (2) the administrative hearing procedures violated Valdez's right to due process; and (3) the administrative hearing officer's findings regarding physical and psychological abuse were clearly erroneous.[3]

Upon careful review of the records and the briefs submitted by the parties, and having given due consideration to the arguments they advance and the issues they raise, we resolve Valdez's points of error as follows and affirm:

(1) Valdez contends that the DHS plainly erred because its October 21, 2010 Notice of Videoconferencing Hearing ("Notice") and subsequent notices of hearing referred to HRS chapter 91 and Hawaii Administrative Rules ("HAR") § 17-1402, but did not mention HAR § 17-2. She argues that the Notice violated HRS § 91-9(b)[4] because it did not specify what statutes or rules would be "involved" in the hearing. Thus, Valdez contends that she did not know which procedures to follow prior to the DHS

---

[3]    Valdez raises four points of error, but we have re-organized for clarity, addressing the first and second points together.

[4]    HRS § 91-9(b) provides that, concerning reasonable notice for a contested case hearing:

> (b)    The notice shall include a statement of:
>
> (1)    The date, time, place, and nature of hearing;
>
> (2)    The legal authority under which the hearing is to be held;
>
> (3)    The particular sections of the statutes and rules involved;
>
> (4)    An explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof; provided that if the agency is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;
>
> (5)    The fact that any party may retain counsel if the party so desires and the fact that an individual may appear on the individual's own behalf, or a member of a partnership may represent the partnership, or an officer or authorized employee of a corporation or trust or association may represent the corporation, trust, or association.

HAW. REV. STAT. § 91-9 (2012).

hearing and, more specifically, that she did not know that she could subpoena witnesses.

We agree that the DHS erred in referencing HAR § 17-1402, where the "right to a hearing" is described as applying to an "applicant for or recipient of public assistance." HAW. ADMIN. R. § 17-1402-4. Valdez was plainly not a "claimant" to whom the hearing rules would apply. HAW. ADMIN. R. § 17-1402-5. We consider whether Valdez's substantial rights were prejudiced by the Notice's deficiency.

To the extent that Valdez was misdirected to HAR § 17-1402, that misdirection appears not to have prejudiced Valdez. Specifically, HAR § 17-1402-5 states that the claimant shall have the opportunity to "question or refute any testimony or evidence, and to confront and cross-examine any witness." HAW. ADMIN. R. § 17-1402-5. HAR § 17-1402 does not preclude a claimant from asking to subpoena a witness; rather, it says nothing about the subject either way. When Valdez was informed at the hearing that Patient and Daughter would not appear, nothing in HAR § 17-1402 prevented her from objecting and asking for the opportunity to "question or refute any testimony or evidence" as HAR § 17-1402-5 provided. On that basis, we conclude that Valdez's substantial rights were not affected by the deficient notice and that her failure to raise an objection constituted a waiver of her right to subsequently complain about the absence of the witnesses.[5] *See, e.g., Waikiki Resort Hotel, Inc. v. City & Cnty. of Honolulu*, 63 Haw. 222, 250, 624 P.2d 1353, 1372 (1981) (holding that the principle that "an appellate court will consider only such questions as were raised and reserved in the lower court applies on review by courts of administrative determinations [and] preclude[s] from consideration questions or issues which were not raised in administrative proceedings."); *see also,*

---

[5]     Valdez does not identify any witnesses whom she might have wanted to subpoena or explain how their presence might have mattered. Valdez was unable to cross-examine Patient and Daughter by the fact that they did not attend the hearing, but we hesitate to find on appeal that a party's substantial rights were prejudiced when, represented by counsel, the party fails to object to the failure of witnesses to appear in person when those witnesses might have presented testimony at the hearing that placed the party in a weaker position than if the witnesses had not testified.

*United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.").

(2)  Valdez argues that the administrative hearing deprived her of her right to due process, because "[w]hile Valdez was afforded a hearing, the rules and procedures that she followed pursuant to [HAR § 17-1402] failed to adequately safeguard her right to due process, thus violating the same." According to Valdez, HAR § 17-1402-5 left her with "no practical ability to contact or even identify the adverse or percipient witnesses" so that she was "left to rely upon mainly character witnesses[,]" and "no reasonable ability to independently investigate [her] claim."  Valdez also argues that the confidentiality provisions of HRS § 346-225[6] denied her a fair hearing because those provisions "caused [DHS] to redact the name and any identifying information for any witness or individual interviewed [during its] investigation" and, as a result, "denied Valdez any real opportunity to re-interview individuals contained in the [DHS] investigation, [or] to secure the parties['] presence for testimony at hearing."  We disagree.

The basic elements of procedural due process of law require both notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Sandy Beach Def. Fund v. City Council of the City & Cnty of Honolulu,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989).  However, due process is not a fixed concept requiring a specific procedural course beyond these basic elements in every situation.  *Id.*  Rather, due process is flexible, calling for such procedural protections as the particular situation demands.  *Id.* (quoting *Morrissey v. Brewer,*

---

[6]    HRS § 346-225 provides, in relevant part:

> **Confidentiality of reports.**  A report made pursuant to this part, including the identity of the reporting person and all records of the report, shall be confidential and any person who makes an unauthorized disclosure of a report or records of a report shall be guilty of a misdemeanor.

HAW. REV. STAT. § 346-225 (Supp. 2013).

408 U.S. 471, 481 (1972)).

Indeed, in *Pila'a 400, LLC v. Board of Land & Natural Resources*, 132 Hawai'i 247, 320 P.3d 912 (2014), the Hawai'i Supreme Court held that a notice of hearing that omitted "involved" statutes and rules under HRS § 91-9(b) did not violate due process. *Id.* at 270-73, 320 P.3d 935-38 (citations omitted) (holding that because the record demonstrated that appellant was "fully apprised of all relevant issues that were to be determined in the contested case hearing" and was "able to present a complete and vigorous defense" to the charges, appellant could not complain of faulty notice under HRS § 91-9(b)).

In Hawai'i, courts focus their due process inquiries on "whether notice ha[s] actually been provided, which [may] be determined by looking to other communications between the parties." *Id.* at 272, 320 P.3d at 937. Accordingly, a hearing notice satisfies the requirements of both due process and HRS § 91-9(b) when the party served "had a meaningful opportunity to be heard and to contest the [administrative agency's] ultimate decision." *Id.* at 273, 320 P.3d at 938.

Valdez was provided multiple notices of the contested case hearing and had a meaningful opportunity to be heard and present evidence and argument at the DHS hearing. She was able to present her own witnesses and to cross-examine DHS's witnesses who were present at the administrative hearing. And although Patient and her daughter ("Daughter") were absent from the hearing, Valdez acknowledged that she was able to identify them from the administrative report. Moreover, just as Valdez had the opportunity to raise procedural objections at the hearing, she also had the opportunity to inquire about absent persons and to request action by the hearing officer to produce them. But Valdez, who was represented by counsel at the hearing did not do so. *See Sharma v. State, Dep't of Land & Natural Res.*, 66 Haw. 632, 641, 673 P.2d 1030, 1036 (1983) (holding that due process was not violated when appellant had the opportunity to demonstrate his defenses to the trial court); *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 237-38 (Tenn. 2010) (holding that due process rights were not violated when appellant failed

5

to raise timeliness issue regarding an agency contested case hearing both before and during the hearing). Therefore, because Valdez had notice and a meaningful opportunity to be heard, and raised no objection to the notice and/or procedures, we cannot conclude that her due process rights were violated.

(3) Valdez contends that the administrative hearing officer's findings that Valdez physically and psychologically abused Patient are clearly erroneous. We disagree.

Valdez argues that, under HRS § 91-12,[7] the findings are inadequate. She also contends that an agency "must make its findings reasonably clear" and that "[t]he parties and the court should not be left to guess . . . the precise finding of the agency[,]" citing *Rife v. Akiba*, 81 Hawaiʻi 84, 87, 912 P.2d 581, 584 (App. 1996) in support. However, *Rife* is inapposite.[8]

### Physical abuse finding

Valdez argues that the administrative hearing officer's findings regarding the confirmation of physical abuse were clearly erroneous because "[t]he officer's expansion of physical abuse to merely rough handling was improper." In support, Valdez points out that Patient's original complaint, which was supported by Daughter, was that her pain was caused when Valdez grabbed her arm "where it was broken," between the thumb and forefinger, but, in fact, it was Patient's pinky finger that was fractured. Valdez also contends that the hearing officer did not properly weigh either her own testimony or the testimony given by her witnesses at the hearing, including several nurses who testified that patient discomfort is unavoidable when performing dressing changes. Valdez's argument, however, lacks merit.

---

[7] HRS § 91-12 provides, in relevant part:

> **Decisions and orders.** Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law.

HAW. REV. STAT. § 91-12 (2012).

[8] Contrary to *Rife*, the decision in this case includes both findings of fact and conclusions of law and, as discussed below, the findings support the conclusions reached.

The pain caused by Valdez's treatment falls within the definition of "physical abuse." The hearing officer correctly stated that the definition of "physical abuse" in HRS § 346-222 requires "the non-accidental infliction of pain, including but *not limited to* hitting, slapping, causing burns or bruises, poisoning, or improper physical restraint." This definition does not require that pain be the result of action directed at a particular location, such as an area of the forearm or a particular digit. Moreover, the hearing officer included in the Findings of Fact section of the Notice of Administrative Hearing Decision (the "decision") the statements by Patient and Valdez regarding the location where Valdez grabbed Patient's arm. Thus, the hearing officer did not exclude those findings, and we are not left to "guess" at the facts behind the decision, as Valdez suggests.

Furthermore, substantial evidence in the record supports the decision. "An agency's findings, if supported by reliable, probative and substantial evidence, will be upheld." *In re Hawaii Elec. Light Co.*, 60 Haw. 625, 630, 594 P.2d 612, 617 (1979) (citing HRS § 91-14(g) (1976)). Here, the administrative hearing officer found the Patient, Daughter, and nurse Staci Okano ("Okano") interviews conducted during the DHS investigation to be consistent and credible. In fact, the hearing officer determined that Patient's and Daughter's statements provided "ample evidence" that Valdez's actions were intentional. Furthermore, the hearing officer afforded "very little weight" to the testimony of Valdez's witnesses because none of them were working or present at the Facility at the time of the incident.

As a reviewing court, we decline to re-weigh the evidence presented to a hearings officer, or credibility determinations made by an agency. *See In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996). Instead, we generally defer to the agency's expertise and experience rather than "substitut[ing our] own judgment for that of the agency." *Igawa v. Koa House Rest.*, 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001) (quoting *Dole Hawai'i Division-Castle & Cooke, Inc. v.*

*Ramil*, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990)) (internal quotation marks omitted). Because we are not convinced that the hearing officer's findings were clearly erroneous, DHS did not clearly err in finding physical abuse.

> *Psychological abuse finding*

Valdez contends that the administrative hearing officer erred by confirming that psychological abuse occurred, specifically contesting the hearing officer's finding that Valdez was "intimidating." Valdez argues that the alleged statement, "I just did it" from Valdez to Patient, "is neither reported nor attributed to [Patient] or Daughter, but is instead attributed to Staci Okano." Valdez's argument, however, lacks merit.

Okano testified as to the statement in question at the administrative hearing. Moreover, Okano's testimony was consistent with her report regarding the incident. As stated above, we decline to re-weigh the evidence and pass on the hearing officer's determination of credibility. *See Hawaiian Elec. Co.*, 81 Hawai'i at 465, 918 P.2d at 567. Accordingly, the administrative hearing officer did not clearly err in finding psychological abuse.

Therefore,

IT IS HEREBY ORDERED that the Findings of Fact and Conclusions of Law; Order Affirming Administrative Hearing Decision Dated April 13, 2011, and the Judgment, both filed on February 1, 2012 in the Circuit Court of the Third Circuit, are affirmed.

DATED: Honolulu, Hawai'i, December 17, 2014.

On the briefs:

Brian J. De Lima and
Francis R. Alcain
(Crudele & De Lima)
for Plaintiff-Appellant.

Heidi M. Rian and
Candace J. Park
Deputy Attorneys General
for Defendants-Appellees.

Chief Judge

Associate Judge

Associate Judge

8